# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. CARL ARTHUR LINDEN, JR., Defendant. | No. 16-CR-0087-LRR<br><br>**REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO SUPPRESS** |

## I. INTRODUCTION

The matter now before me is Defendant's motion to suppress evidence allegedly seized in violation of the Fourth Amendment to the United States Constitution. (Doc. 23). The grand jury charged Defendant in a one-count indictment with Possession of a National Firearms Act Device Not Registered to Possessor, in violation of Title 26, United States Code, Section 5861(d). (Doc. 2). The charge arose from evidence found during the execution of a state search warrant at Defendant's residence on June 21, 2016. Defendant argues that the search warrant lacked probable cause. Indeed, Defendant argues that the warrant was so lacking in probable cause that the Leon good-faith reliance exception to the exclusionary rule should not apply.

The Honorable Linda R. Reade, Chief United States District Court Judge, referred this motion to me for a Report and Recommendation. I did not hold an evidentiary hearing because neither party asked for one and because resolution of this motion turns on what appears within the four corners of the search warrant application. I declined Defendant's request for oral argument as I found it unnecessary. For the reasons that follow, I respectfully recommend that the Court deny Defendant's motion to suppress.

## II. FINDINGS OF FACT

On June 21, 2016, Tama County Deputy Joe Quandt was dispatched to a residence in Gladbrook, Iowa, on a report of vandalism. The victim, Doug Gethmann, reported that someone shot his pickup truck. Fellow Tama County Deputy Trevor Killian contacted Deputy Quandt after overhearing the dispatch call and told Deputy Quandt that Deputy Killian had taken a report of similar vandalism from the victim on June 6, 2016. Deputy Quandt was already aware of an ongoing feud between the victim and his neighbors, Defendant and his girlfriend. The two residences are kiddie-corner from each other. Deputies had previously been called to deal with reports of harassment and other disputes involving these parties.

When Deputy Quandt arrived at the victim's residence, he learned the victim's pickup truck had been shot approximately twelve times earlier that day with pellets. Deputy Quandt recovered a .22 caliber round by the victim's vehicle. Unrepaired damage from the June 6th incident was also visible. The victim stated that he was not home when his truck was damaged on the instant occasion, but was able to limit the time frame to between 10:30 a.m. and 4:00 p.m. that day. The victim, who had a video surveillance system for his property, allowed Deputy Quandt to review the surveillance video. Deputy Quandt saw nothing definitively indicating who shot the victim's truck, but the video did show Defendant was home during most of the time period the damage would have occurred and showed Defendant walking in the road toward the damaged vehicle. Deputy Quandt determined that Defendant's girlfriend was unlikely to have been directly involved as her vehicle was not at home during the incident. Based on where the vehicle was parked and the nature of the damage, Deputy Quandt formed the opinion that the shooting came from the direction of Defendant's residence.

Deputy Quandt applied for a search warrant (Warrant 1) for Defendant's residence that same day. Deputy Quandt wrote an affidavit as part of his application for Warrant 1. (Exhibit 1, 3-4). It included information regarding his observations on scene,

including his belief that the "shots clearly came from the direction of [Defendant's] residence." (*Id*.). He also included that there had been prior harassment and dispute calls between these two parties. (*Id*.). Deputy Quandt stated he reviewed the victim's surveillance video and stated it was clear that there is no "solid evidence" on the video. (*Id*.). He did note, however, that it appeared from the video that Defendant was home during the time period and that Defendant appeared on the video to be walking in the road near the victim's truck. (*Id*.). Deputy Quandt also attached to his affidavit Deputy Killians's report regarding the June 6th incident. (Exhibit 1, at 8). Deputy Killian's report indicates that the damage from June 6th appeared to have been caused by shots coming from Defendant's residence. (*Id*.). That report noted that there had been "ongoing vandalism and harassment" between the victim and Defendant. (*Id*.). Deputy Quandt also attached the calls for service reports from both incidents, and a photograph showing the distance and angle the two properties sit from each other. (Exhibit 1, 5-8).

Magistrate Judge Richard VanderMey signed the search warrant and indicated that he also relied on the fact that the shooting occurred within a short period of time to the requested warrant leading to the likelihood that the gun used and ammunition similar to what was used would be found at the residence. (Exhibit 1, 9).

Deputy Quandt and other Tama County deputies executed the warrant at approximately 10:08 p.m. During the search, deputies recovered ammunition identical to what they had recovered in the victim's driveway and an air-powered rifle capable of firing that ammunition. One of the deputies also observed what was believed to be homemade pipe bombs or explosive devices in the basement and a black powder container and camp fuel. Deputies also recovered a homemade pipe bomb in one of the vehicles on the premises.

The deputies applied for a second search warrant (Warrant 2). That search warrant application included information regarding the items observed by law enforcement while executing Warrant 1. (Exhibit 2). Warrant 2 was issued in the early morning hours of June 22, and authorized the seizure of any explosive material and other material relating

to bomb making. Law enforcement officers found approximately 75 devices in total along with black powder and several pieces of fuse. There was also a small amount of marijuana and several pipes for smoking marijuana.

The government asserts this evidence was submitted to the ATF and four of the devices seized were found to be improvised explosive devices and one item was found to be an improvised incendiary device. (Doc. 28, at 5). The government further claims these five devices were not properly registered and are the basis for the Government's indictment in this matter. (*Id*.).

### III.   ANALAYSIS

Defendant argues the Court should suppress the evidence from the first search because the search warrant lacked probable cause. (Doc. 23-5, at 7-10). Defendant argues that the good-faith reliance exception to the exclusionary rule should not apply because the warrant was so lacking in probable cause that no officer could reasonably rely on a judge's finding of probable cause. (Doc. 23-5, at 10-13). Defendant argues that the evidence from the second search warrant must be suppressed as it is dependent upon the evidence obtained during the first search. (Doc. 23-5, at 14). I will address each of Defendant's arguments in turn.[1]

#### A.   *Probably Cause Supported the Search Warrant*

The Fourth Amendment to the United States Constitution provides that "no [search] Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. AMEND. IV. "Reviewing courts must give substantial deference

---

[1] Because I find probable cause supported the first search warrant, or alternatively the good-faith reliance exception to the exclusionary rule should apply, and because Defendant argues evidence from the second search warrant should be suppressed only because the first warrant was invalid, I do not separately address the validity of the second warrant.

to the original determination of probable cause made by the judge who issued the warrant, and will not be set aside unless the issuing judge lacked a substantial basis for concluding that probable cause existed." *United States v. Edmiston*, 46 F.3d 786, 788 (8th Cir. 1995) (citing *Illinois v. Gates*, 462 U.S. 213, 236, 238-39 (1983). A substantial basis only requires that the issuing judge make a practical and common-sense determination, based only on the circumstances set forth in the affidavit, that the totality of the circumstances point to a fair probability that evidence of a crime will be found at the location. *United States v. Kail*, 804 F.2d 441, 444 (8th Cir. 1986).

I find there was sufficient information in the affidavit to establish a fair probability that evidence of Defendant's involvement in shooting the victim's car would be found in Defendant's residence. In the affidavit, Deputy Quandt: (1) described that there was an ongoing dispute between the victim and Defendant; (2) noted there had been many harassment and dispute calls between the parties in the past; (3) included a report from Deputy Killian recounting a similar instance earlier the same month when the victim's truck had been damaged by an air gun; (4) included a report by Deputy Killian from the June 6th incident in which Deputy Killian noted that damage was located on the driver's side of the vehicle and the angle of that damage appeared that the shots came from Defendant's residence; (5) described how Defendant and the victim lived "kiddy-corner" to one another; (6) reported the victim's statements about the damage that occurred during the day on June 21; (7) described the evidence on the surveillance video showing Defendant was home during the time that the damage allegedly took place; (8) reported finding a small .22 caliber round of ammunition in the victim's driveway; (9) stated that upon observing the direction of the shots, Deputy Quandt concluded the shots came from Defendant's home; (9) included a service record recounting the victim's opinion that the shots were coming from Defendant's home because of the angle of the shots; and (10) included a photograph showing Defendant's residence in relation to the damage.

The totality of this information establishes a fair probability that evidence related to the shooting would be found at Defendant's residence. *See generally United States v.*

*Sawyer*, 144 F.3d 191, 193-94 (1st Cir. 1998) *abrogated on other grounds by United States v. Giggey*, 551 F.3d 27 (1st Cir. 2008) (finding probable cause for search warrant of suspected burglar's residence because of footprints leading between crime scene and suspects home as well as sighting of suspect in area of the burglary around time burglary was thought to have taken place); *United States v. Christenson*, 549 F.2d 53, 56-57 (8th Cir. 1977) (finding probable cause for search warrant of suspected burglar's vehicle related to the burglary of a club because of suspect's status as a well-known burglar and the fact that there was a report of missing items from a nearby motel room in which suspect had stayed in on the same night); *see also United States v. Stately*, No. CRIM. 12-89 JRT/LIB, 2012 WL 3288659, at *8 (D. Minn. July 3, 2012), report and recommendation adopted, No. CIV. 12-089 JRT/LIB, 2012 WL 3288646 (D. Minn. Aug. 10, 2012) (finding a fair probability that evidence of a crime would be found at suspect's mother's residence, because of suspect's proximity to the crime and the existence of a broken window on suspect's vehicle while broken glass was also found at crime scene).

Defendant contends probable cause was lacking because the affidavit was conclusory, and argues the affidavit was conclusory because there was no "independent corroboration" of Deputies Quandt and Killians's inferences regarding the direction of the damage. Conclusory statements alone cannot establish probable cause. *United States v. Summage*, 481 F.3d 1075, 1077–78 (8th Cir. 2007). A conclusory affidavit is one that merely states the officer believes or has a credible reason to believe that a search would yield evidence of criminal conduct. *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010) ("[Conclusory] affidavits are insufficient because they provide the issuing magistrate with no independent basis for making the probable cause determination.") (citing *Gates*, 462 U.S. at 239).

The affidavit in this case is not conclusory. Deputy Quandt identified a number of facts which tended to support a conclusion that Defendant had a motive and opportunity to damage the victim's car, as well as facts supporting an inference that the shooting

came from the direction Defendant's residence. Deputy Quandt clearly stated when he was drawing inferences from observations and other facts. The observations of law enforcement or other circumstantial evidence can be sufficient in themselves to warrant a finding of probable cause. *United States v. Terry*, 305 F.3d 818, 823 (8th Cir. 2002). Deputy Quandt's affidavit also included a photograph of the angle of the damage in relation to Defendant's residence, providing another basis for the magistrate to make the probable cause determination. S*ee United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000) (noting that a judge may draw reasonable inferences from the totality of the circumstances).

Defendant's argument that the deputies' inferences needed to be "independently corroborated" is misplaced. Independent corroboration is a legal standard which requires that information from informants be corroborated to ensure the reliability of the informant. *See*, *e.g.*, *United States v. Wallace*, 713 F.3d 422, 427 (8th Cir. 2013) ("If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable . . . ."); *United States v. Vinson*, 414 F.3d 924, 930 (8th Cir. 2005) ("Information from a confidential informant may be sufficient to establish probable cause if it "is corroborated by independent evidence" or if the informant has a track record of supplying reliable information.") (internal quotation and citation omitted). In this case the deputy arrived at the conclusion that the shots were fired from the direction of Defendant's house not based on information from an informant, but based on evidence showing Defendant had a motive and opportunity to commit the shooting, and from the deputy's own observations of the angle and direction of the shots. This is not the type of information that required independent corroboration.

Although Defendant couches his argument in terms of independent corroboration, Defendant's argument really suggests that the deputies' inferences regarding the direction of the shot were unreasonable, and thus could not be factored into the magistrate's probable cause determination because: (1) the deputy did not take affirmative steps to

confirm his inference (such as conducting a ballistics test); and (2) the inference was unreasonable because the deputy did not have a background in ballistics or some other relevant specialty. There is no legal support for the proposition that the deputy was required to engage in this type of further forensic investigation, or have this type of expertise, to determine probable cause. It is well established that law enforcement officers may make reasonable inferences from the totality of the circumstances in preparing affidavits in support of a warrant. *Thompson*, 210 F.3d at 860. This was satisfied by the existence of an apparent link between the damage and Defendant's residence which was presented to the issuing magistrate. *See Stately*, 2012 WL 3288659, at *9 ("[T]hat the precise source of the broken glass had not yet been determined is not material to establishing probable cause . . . [the officer] did not need to conclusively find that the glass was from a car window."). Defendant provides no support for the sweeping proposition that observations by police officers are per se unreasonable unless they have specialized training in some relevant area. Defendant's authority merely implies that specialized training may lend extra force to an affiant's inference. *See United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001) (noting that the officer was "an experienced narcotics officer"). There was nothing about this deputy's logical inference based on the totality of the circumstances that required ballistics experience. Rather, the inference he made was based on common sense and simple observation. A long duration of general police experience may lend extra force in determining whether an inference is reasonable or not. *United States v. Vaudt*, 413 F.3d 724, 726 (8th Cir. 2005) (emphasizing that all of the inferences made by an officer "with twenty years of experience and four years dedicated to methamphetamine lab investigations") (emphasis added). Deputy Quandt noted in the affidavit in support of the search warrant that he had more than fifteen years of experience.

Accordingly, I find the affidavit in support of the first search warrant established probable cause to believe evidence relating to the vandalism of the victim's truck would be found in Defendant's residence.

### B. *Good Faith Reliance Exception—Indicia of Probable Cause*

As set forth above, I believe the first search warrant issued on June 21, 2016, was supported by probable cause. Accordingly, the warrant was valid and consequently both searches were lawful. Because there was no Fourth Amendment violation, I believe it is unnecessary to consider whether the *Leon* good-faith exception precludes suppression of the seized evidence. Nonetheless, I will address the issue in case the district court disagrees with my analysis on probable cause.

Defendant argues that the affidavit in support of the first search warrant was so lacking in probable cause that the good-faith reliance exception to the exclusionary rule should not apply. Assuming arguendo that probable cause for the search warrant is insufficient, the Court must decide whether to apply the good-faith exception so as to avoid the extreme sanction of exclusion. *United States v. Carpenter*, 341 F.3d 666, 669 (8th Cir. 2003). When a judge has authorized a search warrant, reviewing courts should not suppress evidence seized pursuant to the search warrant even if the reviewing court concludes there was no probable cause to support the search if the officers applying for the search warrant acted in objectively reasonable reliance on the issuance of the warrant by a neutral magistrate. *United States v. Leon*, 468 U.S. 897, 922 (1984). Under this so-called good-faith exception, if a law enforcement officer's reliance on a warrant issued by a magistrate was objectively reasonable, evidence seized pursuant to invalid warrant will not be suppressed. *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007). There are four scenarios in which it is not objectively reasonable for an executing officer to rely on a warrant issued by a magistrate. *Id*. at 431. Of those scenarios, the only one material to this case is whether the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id*.

Defendant argues that it was objectively unreasonable for Deputy Quandt to rely on the warrant issued by the magistrate because the Deputies' inferences about the direction of the damage were conclusory. I disagree. Even if probable cause is lacking,

it was not "so lacking" that Deputy Quandt's reliance on the warrant was "entirely unreasonable". *United States v. Stankee*, No. CR14-2026, 2014 WL 3735605, at *5 (N.D. Iowa July 28, 2014) (finding the probable cause supported the search warrant, but alternatively finding that the warrant was not so lacking in probable cause that officer's reliance on issuance of the warrant by a judge was unreasonable), report and recommendation adopted, No. 14-CR-2026-LRR, 2014 WL 4384325 (N.D. Iowa Sept. 3, 2014). Deputy Quandt's affidavit set forth multiple facts which would allow a reasonable officer to conclude that probable cause existed to search Defendant's residence. *See Raban v. Butler*, No. CIV.A. 11-5656, 2012 WL 592328, at *2–*4 (E.D. Pa. Feb. 22, 2012) (finding that the good-faith reliance exemption applied in case of suspected criminal mischief where officer's affidavit provided a circumstantial link between the vandalism and the suspect's residence, provided a motive explaining suspect's involvement, and noted previous alleged behavior on the part of the suspect that was somewhat similar to allegation of criminal mischief).

Defendant's argument proceeds under the erroneous assumption that it was objectively unreasonable for Deputy Quandt to rely on the warrant unless he had some additional information linking Defendant to the damage to the victim's truck. Defendant does not allege that it was objectively unreasonable for Deputy Quandt to rely on the warrant. Rather, Defendant reiterates the same argument as to why Defendant alleges the warrant lacked probable cause to begin with: (1) reliance on the warrant was unreasonable because the officers did not take affirmative steps to confirm their inference (such as conducting a ballistics test); and (2) reliance was unreasonable because the officers did not have a background in ballistics or some other relevant specialty.

Contrary to Defendant's assumption, while extra knowledge has been used as a factor in determining good-faith, that factor is far from necessary for the good-faith exception to apply. *See Carpenter*, 341 F.3d at 670–73 (determining good-faith by examining each alleged infirmity in the warrant to see whether they present such a glaring error or clear deficiency as would render a belief in probable cause entirely unreasonable

and finding the exception applied without extra background knowledge). Rather, the good-faith exception routinely applies unless there are extreme circumstances which prevent its application. *See*, *e.g.*, *United States v. Herron*, 215 F.3d 812, 814 (8th Cir. 2000) (finding that the good-faith exception did not apply because "there was no technical legal deficiency in the affidavits," but rather, there was "simply no evidence" in the affidavits linking suspect to criminal activity); *United States v. Johnson*, 332 F. Supp. 2d 35, 39 (D. D.C. 2004) (finding the good-faith exception did not apply because: (1) affiant did not describe when information was obtained; (2) affiant failed to corroborate sponsoring witness's account of events; (3) affiant failed to get a statement from any witness as to suspect's residence; (4) information giving rise to the search was stale; (5) nexus to the location to be searched was never established); *United States v. Hove*, 848 F.2d 137, 139–40 (9th Cir. 1988) (finding good-faith exception did not apply because "the affidavit offer[ed] no hint as to why the police wanted to search th[e] residence[,] . . .d[id] not link th[e] location to the Defendant and . . . d[id] not offer an explanation of why the police believed they may find incriminating evidence there; the affidavit simply list[ed] the [suspect's] address as a location to be searched"); *United States v. Gonzales*, 399 F.3d 1225, 1231 (10th Cir. 2005) (finding the good-faith exception could not apply because the affidavit "completely failed to explain why [the officer] believed the items would be found at [suspect's residence]").

This is not an extreme scenario in which the good-faith exception is inapplicable. Even assuming that the inferences about the direction of the shots were "conclusory," this would not make it objectively unreasonable for Deputy Quandt to rely on the warrant. As already noted, there are a number of facts set forth in the affidavit tending to link Defendant to the damage to the victim's truck. *See Carpenter*, 341 F.3d at 670 (noting that good-faith determination also looks to the totality of the circumstances). Even considering the inferences in isolation, it was not objectively unreasonable for Deputy Quandt to believe that the descriptions of where the damage to the victim's truck occurred in relation to Defendant's house was adequate to support the deputies' inferences. *Id*.

As a matter of common-sense, it is logical to infer that damage from a projectile came from the nearest residence where someone lived who had a motive and opportunity to commit the crime. It was therefore not unreasonable for Deputy Quandt to rely on a neutral magistrate's conclusion that the affidavit established probable cause to execute the search of Defendant's residence. *Id*. at 671–72 (noting that it was not entirely unreasonable for the affiant, who neglected to explicitly indicate a nexus between the residence and contraband, to rely on the warrant because the issuing magistrate made a "common sense" inference regarding the nexus).

Accordingly, I find that exclusion of the evidence is inappropriate, even if a reviewing court concluded the first search warrant lacked probable cause, because it was objectively reasonable for the deputy to rely upon the neutral magistrate's conclusion that probable cause existed to search Defendant's residence.

## IV. CONCLUSION

For the reasons set forth above, I respectfully recommend the Court: (1) find the affidavit in support of the first search warrant established probable cause to search Defendant's residence; (2) alternatively find that the Leon good-faith reliance exception to the exclusionary rule applies, and **deny** Defendant's motion to suppress (Doc. 28).

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CRIM. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CRIM. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED t**his 6th day of February, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa