**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 16-CR-87-LRR |
| vs. | **ORDER** |
| CARL ARTHUR LINDEN, JR., | |
| Defendant. | |

_____

*TABLE OF CONTENTS*

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.*   *RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*  *STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.*   *RELEVANT FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . *3*

*V.*    *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*

    *A.*    *Probable Cause* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
    *B.*    **Leon** *Good-Faith* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*

*VI.*   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

## I.  INTRODUCTION

The matter before the court is Defendant Carl Arthur Linden, Jr.'s Objections to Report and Recommendation ("Objections") (docket no. 37), timely filed in response to United States Chief Magistrate Judge C.J. Williams's Report and Recommendation (docket no. 31), which recommends that the court deny Defendant's Motion to Suppress Evidence ("Motion") (docket no. 23).

## II. RELEVANT PROCEDURAL HISTORY

On November 15, 2016, the grand jury returned a one-count Indictment (docket no. 2) charging Defendant with unlawful possession of destructive devices in violation of 26 U.S.C. § 5861(d). The Indictment also contained a forfeiture allegation. On January 17, 2017, Defendant filed the Motion. On January 26, 2017, the government filed a Resistance (docket no. 28). On February 7, 2017, Judge Williams issued the Report and Recommendation, which recommends that the court deny the Motion. On February 20, 2017, Defendant filed the Objections. The government has not filed a response to the Objections and the time for doing so has expired. The Report and Recommendation and the Objections are fully submitted and ready for decision.[1]

## III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept,

---

[1] On February 10, 2017, Defendant, without the assistance of his attorney, filed Correspondence (docket no. 34) with the court making further arguments against Judge Williams's findings in the Report and Recommendation. As a general matter, courts do not consider pro se briefing from a defendant who is represented by counsel without leave of court. *Cf. United States v. Miranda-Zarco*, 836 F.3d 899, 901-02 (8th Cir. 2016) (collecting cases). However, the court has reviewed the Correspondence and finds nothing within the Correspondence that would change the court's conclusion arrived at herein.

Additionally, the court notes that the Correspondence was filed under seal. After reviewing the Correspondence, the court finds no basis for sealing it. Accordingly, the court shall direct the Clerk of Court to unseal the Correspondence.

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *See Lothridge*, 324 F.3d at 601. Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

## IV. RELEVANT FACTUAL BACKGROUND

On June 21, 2016 at around 4:12 p.m., Tama County Sheriff's Deputy Joe Quandt was dispatched to Doug Gethmann's residence after a report of criminal mischief. *See* Quandt Deposition Transcript (docket no. 23-3) at 4. Upon arriving at Gethmann's residence, Deputy Quandt learned that Gethmann's pickup truck had been parked in the driveway that entire day and that the vehicle had sustained damage to the driver's side hood and front left fender. *Id.* Deputy Quandt stated that "[i]t appeared that somebody shot some kind of ammunition at the vehicle causing little dents." *Id.* Gethmann reported to Deputy Quandt that the vehicle had previously sustained damage of a similar nature. *Id.* However, Deputy Quandt was not involved in any prior investigation into the earlier vehicle damage. *Id.* At his deposition, Deputy Quandt stated that Defendant's house was situated less than one hundred yards to the northeast from where Gethmann's vehicle had been parked on June 21, 2016. *Id.* at 5. He also stated that the side of the vehicle that had sustained damage was facing Defendant's residence. *Id.*

After speaking to Gethmann, Deputy Quandt viewed surveillance video which Gethmann had set up on his residence due to prior disputes with Defendant. *Id.* at 6. The surveillance video depicted Defendant moving about his property and walking up the street by the damaged vehicle, disappearing from sight for a moment, and then reappearing to walk back to his residence. *Id.* The surveillance video also shows that, at some point,

3

Defendant left his residence. *Id.* After viewing the surveillance video, Deputy Quandt spoke with Tama County Sheriff's Deputy Trevor Killian regarding the prior damage that the vehicle in question had sustained. *Id.* Deputy Killian informed Deputy Quandt that he had responded to a previous call made by Gethmann that the same vehicle had sustained similar damage at an earlier time.[2] *Id.*

Upon closer investigation, Deputy Quandt recovered an intact pellet from what he believed was a .22 caliber firearm on the ground on the side of the vehicle facing away from Defendant's residence.[3] *Id.* at 5. However, Deputy Quandt also admitted that he had no specialized training in ballistics. *Id.* at 4. Deputy Quandt stated that he suspected that the pellet and any rounds that damaged the vehicle came from Defendant's residence based on "the direction of the damage, [and] where [he] found the round on the opposite side of the vehicle." *Id.* at 7. He opined that there was no other place where the shots could have come from. *Id.*

After investigating the scene and conversing with Deputy Killian, Deputy Quandt applied for a search warrant. *See id.*; *see also* First Application. The search warrant sought to recover ".22 caliber ammunition similar to [an] attached photo [of the pellet recovered at the scene] and any .22 caliber rifles or pellet guns." First Application at 1. In support of the First Application, Deputy Quandt wrote an affidavit which stated the following: (1) Deputy Killian informed Deputy Quandt about a previous incident of

---

[2] In the Correspondence, Defendant disputes the exact date that the previous damage occurred. *See* Correspondence at 1. In the First Application (docket no. 23-1), Deputy Quandt states that Deputy Killian "had taken a previous call from [Gethmann] about the same matter. That call was reported back on June 6, 2016." First Application at 3. Additionally, the Call for Service Record provided with the First Application clearly reflects Defendant's version of events. *See id.* at 5. Thus, the court declines to alter its analysis of this fact.

[3] Deputy Quandt testified that it was actually Gethmann's grandson who found the pellet, but that Deputy Quandt seized the pellet as evidence. *Id.* at 5.

damage to Gethmann's vehicle; (2) there was an ongoing dispute between Defendant, his girlfriend Mary Drake and Gethmann including "many" harassment and dispute calls between the parties in the past; (3) Deputy Quandt examined the damage to Gethmann's vehicle and "observed the direction of the shots had clearly come from the direction of [Defendant's] residence"; (4) a review of the surveillance video did not yield "any solid evidence," but did show Defendant walking on the roadway toward where the damaged vehicle was parked; (5) Deputy Quandt recovered a .22 caliber round of ammunition in the driveway that "was obviously used to cause damage to [Gethmann's] vehicle"; and (6) it was "obvious" from the damage to the vehicle and the direction of the shots that the shots had come from Defendant's residence. *See id.* at 3. Deputy Quandt included Deputy Killian's record from the previous incident, the Call for Service Record from the day at issue and a photograph of Defendant's residence in relation to Gethmann's. *See id.* at 5-8. Judge Richard Vander Mey signed the search warrant ("First Warrant"), further noting that the temporal proximity between the alleged shooting and the First Application "add[ed] to the likelihood that the gun and ammunition [were] located [at] the search location." *Id.* at 9.

Deputy Quandt and several other Tama County Sheriff's Deputies executed the First Warrant at 10:08 p.m. on the evening of June 21, 2016.[4] Quandt Deposition Transcript at 7. In executing the warrant, the Deputies recovered an air rifle and ammunition that they believed were capable of causing the type of damage suffered by Gethmann's vehicle. *Id.* at 9; *see also* First Application at 13. The officers also discovered what Deputy

---

[4] In the Objections, Defendant argues that the Report and Recommendation incorrectly stated that Deputy Quandt determined that Defendant's girlfriend could not have been involved with the damage. *See* Objections at 3. Because Defendant is correct that Defendant's girlfriend and her vehicle were subject to search under the First Warrant, the court shall not rely on the finding that Deputy Quandt did not suspect involvement by Defendant's girfriend.

Quandt characterized as explosive materials in the basement of Defendant's residence. *See* Quandt Deposition Transcript at 9; *see also* First Application at 13. At that time, the Deputies determined that they would apply for a second search warrant ("Second Warrant") in an attempt to recover further explosive materials. *See* Quandt Deposition Transcript at 9; *see also* Second Application (docket no. 23-2).

The Second Application sought to recover "[a]ny explosive material to include but not limited to homemade pipe bombs, black powder, fuels, fuses, fusing devices, containment devices, piping, propellants, stringers, and evidence of purchases, instructions on how to make pipe bombs, and any receipts for those materials." Second Application at 1. In support of the Second Application, Deputy Quandt wrote an affidavit. *See id.* at 3. He stated that, during the execution of the First Warrant,

> deputies located what appeared to be homemade pipe bombs in the basement of [the] residence. Deputies also located a black powder container and camp fuel container in the same area. Deputies also located a homemade pipe [bomb] in the glove box of one of the vehicles on the property. The homemade pipe bombs had fuses attached to the devices . . . .

*Id.* at 3. Judge Vander Mey signed the Second Warrant, acknowledging that the place to be searched was the same residence as the First Warrant. *Id.* at 4. Law enforcement officials recovered numerous devices, as well as black powder and several pieces of fuse after executing the Second Warrant. *See id.* at 6-12. Several of these devices form the basis of the instant Indictment.

## V. ANALYSIS

Defendant argues that Judge Williams erred in finding that Deputy Quandt's affidavit in support of the First Application was not conclusory and that probable cause supported the First Warrant. *See* Objections at 3-9. He also argues that Judge Williams erred in finding that, even if the First Warrant was not supported by probable cause, the Deputies were protected by the so-called *Leon* good-faith doctrine. *See id.* at 9-13.

Finally, Defendant argues that, because the Second Warrant relied on the illegal search based on the First Warrant, all evidence must be suppressed. *Id.* at 13-14. Because Defendant does not challenge the sufficiency of the Second Warrant apart from arguing that the First Warrant was invalid, the court shall first determine the validity of the First Warrant, and, if valid, shall adopt the Report and Recommendation.

### A. *Probable Cause*

The Fourth Amendment states, in relevant part, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Defendant does not challenge the First Warrant's particularity in describing the place to be searched or things to be seized. Instead, Defendant argues that the probable cause to issue the First Warrant was lacking. "Probable cause exists if there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Garcia-Hernandez*, 682 F.3d 767, 771 (8th Cir. 2012) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Courts consider whether "the warrant application and affidavit describe circumstances showing" probable cause. *United States v. Hart*, 544 F.3d 911, 914 (8th Cir. 2008) (quoting *United States v. Robinson*, 536 F.3d 874, 877 (8th Cir. 2008)).

"In reviewing a judicial determination of probable cause, [courts] affirm if the judicial officer that authorized the search had a substantial basis for concluding that probable cause existed, and [courts] accord substantial deference to the judicial officer's finding." *Garcia-Hernandez*, 628 F.3d at 771 (internal quotation marks omitted) (quoting *United States v. Buchanan*, 574 F.3d 554, 561 (8th Cir. 2009)). Probable cause determinations are made by reviewing the totality of the circumstances. *See United States v. Hansel*, 524 F.3d 841, 845 (8th Cir. 2008); *see also United States v. Zamora-Garcia*, 831 F.3d 979, 983 (8th Cir. 2016) ("The test for probable cause is not reducible to precise

definition or quantification, and finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence have no place in the probable-cause decision." (alteration and internal quotation marks omitted) (quoting *Florida v. Harris*, ___ U.S. ___, ___, 133 S. Ct. 1050, 1055 (2013))). A judicial officer has a substantial basis for concluding that probable cause existed when a "practical, common-sense" consideration of "all the circumstances set forth in the affidavit before him" demonstrate "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Kail*, 804 F.2d 441, 444 (8th Cir. 1986).

"Not only may an issuing judge 'draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant, . . . law enforcement officers may make reasonable inferences in preparing affidavits in support of a warrant.'" *United States v. Brackett*, 846 F.3d 987, 992 (8th Cir. 2017) (quoting *United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000)). "[T]here is no requirement that an affiant have first-hand knowledge of every allegation he includes in his affidavit." *United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011). However, "[c]onclusory statements made by affiants fail to give the issuing magistrate a substantial basis for determining that probable cause exists." *United States v. Summage*, 481 F.3d 1075, 1077-78 (8th Cir. 2007). This is so because such conclusory statements are insufficient to allow the magistrate to make a fair and impartial determination as to whether probable cause exists. *See id.*; *see also United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010) (noting that conclusory statements are those which merely "state[] that [law enforcement officers] believed or had credible reason to believe that a search would yield evidence of criminal conduct" and that "such affidavits are insufficient because they provide the issuing magistrate with no independent basis for making the probable cause determination" (citing *Gates*, 462 U.S. at 239)).

Defendant objects to Judge Williams's finding that the affidavit in support of the First Application was not conclusory, *see* Objections at 3-6, and to the ultimate finding that probable cause to issue the warrant existed, *see id.* at 6-9. The court shall overrule these Objections. Deputy Quandt's affidavit was not so conclusory as to rob Judge Vander Mey of a substantial basis for finding that probable cause to issue a warrant existed. Deputy Quandt reasonably relied on the information provided by a fellow officer that Gethmann's vehicle had suffered similar damage in the past. *See* First Application at 3; *United States v. Robinson*, 664 F.3d 701, 703 (8th Cir. 2011) ("When multiple officers are involved in an investigation, probable cause may be based on their collective knowledge and need not be based solely on the information within the knowledge of the . . . officer [in question] as long as there is some degree of communication." (quoting *United States v. Frasher*, 632 F.3d 450, 453 (8th Cir. 2011))). Deputy Quandt also stated that there was an "ongoing dispute" between Defendant and Gethmann and noted that Defendant had been at his residence on the day that the vehicle suffered damage, as shown in the surveillance video.[5] First Application at 3. Deputy Quandt's observation of the "direction of the shots," and the intact pellet recovered from the driveway, made it obvious to him that the pellets had been shot from Defendant's residence. *Id.* In examining the totality of the circumstances, the court finds that Judge Vander Mey had a substantial basis for concluding that probable cause existed. The statements contained in the affidavit are dissimilar to those the Eighth Circuit Court of Appeals identified as conclusory in *Colbert* because they do significantly

---

[5] In the Correspondence, Defendant argues that the surveillance video cannot establish probable cause because it did not depict Defendant actually inflicting the damage to the vehicle. *See* Correspondence at 1-2. However, the video surveillance does demonstrate that Defendant was home and had the opportunity to inflict the damage. While Defendant is correct that the surveillance video does not conclusively demonstrate that Defendant caused the damage, Deputy Quandt and Judge Vander Mey were certainly entitled to consider it as part of the "totality of the circumstances" analysis underlying probable cause. *See Hansel*, 524 F.3d at 845.

more than merely state that Deputy Quandt "believed or had credible reason to believe that a search would yield evidence of criminal conduct." *Colbert*, 605 F.3d at 576. Indeed, they fully explain the reasons justifying Deputy Quandt's beliefs.

Defendant further argues that Deputy Quandt's lack of ballistics training renders any opinion that shots came from Defendant's residence incapable of supporting probable cause. *See* Objections at 6.[6] However, law enforcement officers are entitled to "make reasonable inferences" in preparing affidavits for warrant applications. *See Brackett*, 846 F.3d at 992. After observing the angle of the damage on the vehicle, it was entirely reasonable for Deputy Quandt to conclude that any shots came from Defendant's residence. Defendant also argues that Deputy Quandt's failure to conduct "further investigation" rendered his statements conclusory. *See* Objections at 6. The flexible nature of the probable cause standard precludes a requirement that law enforcement officers must exhaustively investigate every situation before seeking to obtain a warrant, and Defendant cites no controlling authority stating the same. *See also Fiorito*, 640 F.3d at 346.

Finally, Defendant argues that "[t]here must be a nexus between the contraband and the property searched *other than* the mere fact that the suspect owned the home." Objections at 8 (citing *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009)). However, Deputy Quandt's affidavit also stated that there was a history of disputes between Defendant and Gethmann. *See* First Application at 3. Thus, the mere fact that Defendant owned the residence was not the sole or primary basis for issuing the warrant. Furthermore, Defendant's attempts to distinguish the legal authority cited in the Report and Recommendation is unavailing. *See* Objections at 8-9 (citing *United States v. Summage*, 481 F.3d 1075 (8th Cir. 2007); *United States v. Stately*, Criminal no. 12-89 (JRT/LIB), 2012 WL 3288659 (D. Minn. July 3, 2012); *Raban v. Butler*, Civil Action No. 11-5656, 2012 WL 592328 (E.D. Pa. Feb. 22, 2012)). Even were the court to accept Defendant's

---

[6] *See also* Correspondence at 2.

arguments and decline to rely on such authority, it would find that the affidavit supported Judge Vander Mey's issuance of the warrant. The facts included in the affidavit were more than sufficient to establish probable cause because they demonstrated that Defendant was home and moving about his residence on the date that the vehicle was damaged, that Defendant had a motivation to inflict the damage because of the history between himself and Gethmann and that Defendant's residence was sufficiently close to Gethmann's vehicle and positioned such that a firearm discharged from Defendant's home could inflict the damage suffered by the vehicle. Such facts, along with Judge Vander Mey's own independent observation regarding the temporal proximity between the alleged damage and the First Application, demonstrate that Judge Vander Mey had a substantial basis for concluding that there was a "fair probability" that implements of a crime would be found at Defendant's residence. *See Hart*, 544 F.3d at 914; *Hansel*, 524 F.3d at 845. Even if some of the statements in Deputy Quandt's affidavit could be read as conclusory, there was a substantial basis on which the magistrate could conclude that probable cause existed. Accordingly, the court shall overrule the Objections.

### B. Leon *Good-Faith*

Because the court has determined that probable caused supported the issuance of the First Warrant, the court shall overrule the Objections and deny the Motion on those grounds. However, out of an abundance of caution, the court shall proceed to determine whether, even if the warrants were not supported by probable cause, the Motion should be denied because of the so-called *Leon* good-faith exception.

In *United States v. Leon*, the Supreme Court held that "there is an exception to the exclusionary rule if 'an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope,' even though a court were later to conclude that the warrant was invalid." *United States v. Hopkins*, 824 F.3d 726, 733 (8th Cir. 2016) (quoting *United States v. Leon*, 468 U.S. 897, 920 (1984)).

In order for the *Leon* good faith exception to apply to a warrant based on evidence obtained through a violation of the Fourth Amendment, 'the [officers'] prewarrant conduct must have been close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable.'

*Id.* (quoting *United States v. Cannon*, 703 F.3d 407, 413 (8th Cir. 2013)). The proper inquiry in applying the good-faith exception is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* (quoting *Leon*, 486 U.S. at 922 n.23).

There are four defined circumstances which will preclude a finding of good faith by a reviewing court, of which only one is applicable to the instant case. *See* Objections at 10. Particularly, the good-faith exception will not apply where "the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (quoting *Cannon*, 703 F.3d at 412). This standard is a demanding one. *See United States v. Ross*, 487 F.3d 1120, 1122-23 (8th Cir. 2007) ("'Entirely unreasonable' is not a phrase often used by the Supreme Court, and we find nothing in *Leon* or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong choice of words." (quoting *United States v. Carpenter*, 341 F.3d 666, 670 (8th Cir. 2003))).

Defendant argues that, because the affidavit in support of the First Application was riddled with conclusory statements made by Deputy Quandt, his reliance on the subsequently issued First Warrant was entirely unreasonable. *See* Objections at 11. Defendant further argues that this scenario represents one of the extreme cases wherein the *Leon* good-faith exception should not apply because the Deputies were aware that no further investigation had been made to bolster Deputy Quandt's conclusory statements in the First Application, such that the Deputies objectively knew that there was no evidence linking Defendant to the alleged crime. *Id.* at 12-13. The court disagrees. Even assuming

that Defendant is correct and that the statements in the affidavit were so conclusory as to prevent a finding of probable cause, the court finds that the facts alleged in the affidavit and known to Deputy Quandt were "close enough to the line of validity" to make the Deputies' belief in the validity of the warrant objectively reasonable. *See Hopkins*, 824 F.3d at 733. In particular, even if Deputy Quandt was conclusory in his ultimate determinations that the shots had "clearly come" from Defendant's residence and that Defendant was "clearly" responsible for the damage, the location of the damage on the vehicle, the fact that Defendant was home when the damage apparently occurred and the history between Defendant and Gethmann made it objectively reasonable for the Deputies to believe that the First Warrant was valid. Any failure to further investigate Gethmann's allegations did not make official belief in the validity of the warrant "entirely unreasonable." *Cannon*, 703 F.3d at 412. There is nothing about the Deputies' investigation or Deputy Quandt's affidavit that suggests this high standard requires exclusion here. Accordingly, the court finds that the *Leon* good-faith exception applies to the instant action. The court shall overrule the Objections.

## VI. CONCLUSION

In light of the foregoing, the Objections (docket no. 37) are **OVERRULED**, the Report and Recommendation (docket no. 31) is **ADOPTED** and the Motion (docket no. 23) is **DENIED**. The Clerk of Court is **DIRECTED** to unseal the Correspondence (docket no. 34).

**IT IS SO ORDERED.**

**DATED** this 8th day of March, 2017.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA