**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CARL ARTHUR LINDEN, JR.,<br><br>Defendant. | No. 16-CR-87-LRR<br><br>**REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA** |

_____

## I. INTRODUCTION

This case is before me pursuant to defendant's Motion to Withdraw Guilty Plea. (Doc. 92). Defendant entered a guilty plea on March 13, 2017, to a one-count information charging him with possession of ammunition as an unlawful drug user. Defendant now claims he is innocent of that charge and that he was pressured and coerced by his lawyer, Al Willett, and by his fiancé, Mary Drake, to lie during his change of plea hearing and to admit facts that were not true.

The Honorable Linda R. Reade, United States District Court Judge, referred this motion to me for a report and recommendation. On Monday, July 31, 2017, I held an evidentiary hearing on defendant's motion. Defendant and Ms. Drake testified on behalf of defendant, and offered Exhibits A through H. The government called attorneys Al Willett and Dillon Besser, and offered Exhibits 1 through 4.

For the reasons that follow, I respectfully recommend that the Court deny defendant's motion to withdraw his guilty plea.

## II. FINDINGS OF FACT

On November 15, 2016, the grand jury returned a one-count indictment against defendant charging him with possession of a National Firearms Act Device Not Registered to Possessor; in other words, a home-made explosive device. (Doc. 2). Defendant retained Al Willett to represent him. Defendant was arraigned on November 22, 2016, and released under conditions that included that he not use controlled substances. (Doc. 9). Trial was originally scheduled for January 23, 2017, but the Court granted defendant's motion to continue the trial to February 21, 2017. (Docs. 8, 14). On January 6, 2017, the Court appointed Mr. Willett to represent defendant after defendant demonstrated that he lacked the financial ability to continue to retain counsel. (Doc. 21).

On January 17, 2017, defendant filed a motion to suppress evidence. (Doc. 23). On January 26, 2017, the Court granted defendant's second motion to continue the trial, this time to March 20, 2017. (Doc. 29). On February 7, 2017, I recommended the Court deny defendant's motion to suppress. (Doc. 31). The District Court adopted that recommendation. (Doc. 51).

On February 9, 2017, the government filed a motion to revoke defendant's pretrial release on the ground that defendant failed to appear on three occasions in December to provide urine samples, and that defendant tested positive for methamphetamine on January 24, 2017. (Doc. 33). On February 27, 2017, after a hearing, I granted the government's motion to revoke defendant's pretrial release and ordered defendant detained pending trial. (Doc. 46).

On March 8, 2017, the government sent Mr. Willett a letter outlining a proposed plea deal. The government indicated that claimant could plead guilty either to the pending charge, or waive indictment and plead guilty to a charge of being an unlawful drug user in possession of ammunition. During a search of defendant's residence on June 21, 2016,

officers photographed the contents of a drawer in defendant's basement workshop that contained two or three marijuana pipes and a small baggie containing a small amount of marijuana. (Exhibit 1). Officers also photographed the contents of a kitchen drawer that contained two handguns (which defendant testified were .22 caliber handguns that did not function) and a box of Remington ammunition. (Exhibit 2). The officers did not seize the ammunition.[1] The government relied on this evidence, along with a statement by a neighbor that during the summer of 2016 he smoked marijuana with defendant, as the factual basis supporting the proposed ammunition charge. Part of the proposed deal included a joint recommendation by the government and defendant that the Court sentence defendant to a term of probation, and that the government would not resist a defense motion that the Court release defendant pending sentencing. These additional terms would apply regardless of whether defendant pleaded guilty to the pending explosives charge or the proposed ammunition charge.

On the morning of Friday, March 10, 2017, attorneys Al Willett and Dillon Besser met with defendant to discuss the government's plea offer. Mr. Willett testified that they both quickly rejected the idea of defendant pleading guilty to the explosives charge as defendant insisted he was innocent of the charge and Mr. Willett believed defendant had a viable defense to that charge based on the expert's report. Mr. Willett and Mr. Besser testified that the conversation then turned to determining if there was a factual basis for defendant to plead guilty to the ammunition charge. There was apparently little or no conversation about the ammunition; Mr. Willett and Mr. Besser testified that defendant never claimed to not possess ammunition. Rather, the focus was to determine if there

---

[1] During the hearing, defendant suggested through cross examination of Mr. Willett that the ammunition was not .22 caliber ammunition and therefore would not have even fit the non-functioning handguns, nor a .22 caliber rifle also observed and photographed during the search of the house. No evidence was presented, however, regarding the caliber of the box of ammunition. Nor is the caliber of ammunition referenced in the information or plea agreement.

was an overlap in the time period when defendant used marijuana and when he possessed ammunition. Defendant denied smoking marijuana with the neighbor in the summer of 2016, as alleged by the neighbor. Defendant did admit to the attorneys that he smoked marijuana in his home during the period of December 2015 and January 2016. Because that time frame occurred before the June 2016 search, Mr. Willett concluded that it provided an overlap between defendant's possession of the ammunition and defendant's use of a controlled substance sufficient to establish a factual basis for a guilty plea. Mr. Willett and Mr. Besser testified that at the conclusion of the meeting (which lasted approximately just short of an hour and a half), defendant was considering pleading guilty to the ammunition charge. Although Mr. Willett described the plea offer as the "deal of a century" or "the second-best deal" he had ever encountered, he encouraged defendant to sleep on his decision and indicated that they would meet again early Monday morning, March 13, 2017. At some point after this meeting, Mr. Willett contacted the government and indicated the time period during which defendant could articulate a factual basis for being an unlawful drug user in possession of ammunition.[2]

Defendant testified that during the meeting with the attorneys, he told Mr. Willett at least a half-dozen times that he was innocent of the ammunition charge. Defendant testified that he told Mr. Willett he did not use marijuana during this time period, had not, in fact, used marijuana for ten years. Defendant claimed there were medical records that would show he did not test positive for marijuana during this time period. He also testified that the neighbor was a felon who possessed firearms and that the government should be prosecuting the neighbor for using marijuana and possessing firearms. Defendant testified that Mr. Willett responded that if defendant did not plead guilty to

---

[2] That time frame is reflected in the information and plea agreement. (Docs. 57 & 61, Exhibit 1).

this offense, then the government would find something else with which to charge defendant because the government had resources and an ego.

Sometime between Wednesday, March 8, 2017, and Monday, March 13, 2017, defendant's fiancé Mary Drake visited defendant for a half-hour in the Linn County Jail where defendant was being held pending trial.[3] Ms. Drake testified that she had spoken to Mr. Willett who told her of the plea deal. She testified that Mr. Willett told her to convince defendant to take the plea deal and that if he did not plead to something, the government had the resources and would just find something else with which to charge defendant. During her meeting with defendant, Ms. Drake encouraged defendant to take the plea deal because she want him to come home because defendant was in poor health and because their business was failing while he was incarcerated. Defendant and Ms. Drake testified that the meeting was heated because defendant insisted that he was not guilty of such an offense and would not plead guilty to something he did not do. Both testified that by the end of the meeting, defendant was still insistent that he was innocent of the ammunition charge and would not plead guilty, but would talk with Mr. Willett further. Ms. Drake also testified that the ammunition and marijuana pipes were not hers.

On the morning of Monday, March 13, 2017, defendant met alone with defense counsel at the Linn County Jail to review the proposed information and plea agreement that the government had in the meantime provided to Mr. Willett. Mr. Willett testified that defendant was "anxious" to go forward with the plea, meaning he wanted to plead guilty. Mr. Willett stated that defendant's primary concern was getting out of jail pending

---

[3] The date of this meeting is uncertain as Ms. Drake variously testified that it occurred the day before defendant entered his guilty plea (which would have been Sunday, March 12, 2017), or Tuesday, March 7, 2017. The latter date seems unlikely because they discussed the plea deal which was not presented until March 8, 2017. The former seems more likely as the testimony indicated that defendant and Ms. Drake discussed the plea offer and that defendant still wanted to talk with Mr. Willett about the offer.

sentencing and receiving a probationary sentence. Mr. Willett testified that he told defendant that there were no guarantees, but that it was close to a certainty that Mr. Willett could secure defendant's release as part of a plea agreement. Mr. Willett and defendant both testified that they went over the plea agreement in detail with Mr. Willett reading most of it to defendant. Defendant admitted that he signed the plea agreement and initialed the fact section, but claimed he did not read the fact section. Defendant testified that he knew that by initialing the fact section he was admitting the facts were true. Mr. Willett testified that defendant did not claim he was innocent of the ammunition charge or contest the factual basis for the charge during this meeting either. Defendant testified that Mr. Willett discussed with him the questions that I would ask defendant during the change of plea hearing, including the portion when we would discuss the factual basis for the plea. Defendant denied that Mr. Willett ever told him to lie to the Court, but testified that it was just what he needed to do to get the plea deal.

At 2:00 p.m. on March 13, 2017, defendant appeared before me and entered a guilty plea. A transcript of that change of plea hearing was admitted as Exhibit 3. At the beginning of the hearing, I placed defendant under oath. (Exhibit 3, at 4). Defendant stated that he was generally satisfied with the services provided by Mr. Willett. (Exhibit 3, at 7). Starting at the bottom of page 9 and continuing on to page 12, I discussed each element of the offense with defendant. During that exchange, defendant admitted that he knowingly possessed the Remington ammunition between December 2015 and January 2016 in the Northern District of Iowa, that he was an unlawful user of marijuana during that time period, and that the ammunition had crossed a state line at some point prior to his possession of it. (Exhibit 3, at 9-12). During the change of plea hearing on March 13, 2017, I went over the plea agreement with the defendant. Defendant testified at that hearing that he had reviewed the plea agreement in its entirety before he signed it and that by signing it he intended to indicate that he understood and agreed to its terms.

6

(Exhibit 3, at 13). With regard to the fact section, defendant testified that he initialed each of the paragraphs in the fact section to indicate that the information in those paragraphs was true and correct. (Exhibit 3, at 14). I warned defendant that if he pled guilty and the district court accepted his guilty plea, that he would have no right to withdraw that guilty plea even if he later changed his mind. (Exhibit 3, at 22). I then asked defendant if anyone had "forced or pressured or threatened" him "in any way" to get him to plead guilty; defendant said "No." (Exhibit 3, at 22-23). I asked him that question a second time and he again denied being forced or pressured in any way to plead guilty. (Exhibit 3, at 25). He affirmatively stated that his decision to plead guilty was a voluntary decision. (*Id.*).

At the conclusion of the hearing, defendant requested that I release him subject to conditions pending sentencing; the government did not oppose the motion. (Exhibit 3, at 27-32). I granted the motion, releasing defendant under the same conditions previously imposed. (Exhibit 3, at 32-33). I warned defendant that if he violated any of those conditions, that he may jeopardize the possibility of receiving the probationary sentence that the parties intended to recommend to the Court. (Exhibit 3, at 33).

On April 18, 2017, the government filed a motion to revoke defendant's presentence release on the ground that sweat patches worn by defendant tested positive for methamphetamine. (Doc. 68). On April 25, 2017, after a hearing, I granted the government's motion and revoked defendant's release pending sentencing. (Doc. 73).

On May 2, 2017, Mr. Willett filed a motion to withdraw as counsel. On May 9, 2017, I held an ex parte hearing on the motion. A transcript of that hearing was admitted as government's Exhibit 4.[4] During that hearing defendant claimed that he was innocent

---

[4] In his brief filed in support of his motion to withdraw his guilty plea, defendant alleged that the Court "pressured and unduly influenced" him to plead guilty when I advised defendant that Mr. Willett "was an excellent attorney and [defendant] should follow his advice." (Doc. 92-1, at 2). At the hearing on July 31, 2017, defense counsel retracted that allegation when he realized that

7

of the ammunition charge. I granted Mr. Willett's motion to withdraw as counsel and appointed F. David Eastman to represent defendant. (Doc. 77). Also on May 9, 2017, the United States Probation Office provided the parties with a draft presentence investigation report. (Doc. 79).

At the hearing on July 31, 2017, defendant testified that he told Mr. Eastman at their first meeting that he was not guilty of the ammunition charge. Mr. Eastman provided defendant with a three-page letter outlining the pros and cons of attempting to withdraw his guilty plea. Defendant testified that he knowingly lied when he admitted at the change of plea hearing that he used marijuana and possessed the ammunition. Defendant claimed that he lied because his attorney and Ms. Drake pressured and coerced him into pleading guilty. Defendant claimed that he never saw the ammunition and that he believes a law enforcement officer planted the box of ammunition in his drawer. Defendant also claims that he never saw the baggie of marijuana and that it was planted by law enforcement. Indeed, much of defendant's brief and all of his exhibits focus on matters related to the search in an effort to call into question the veracity of the law enforcement officers generally and Deputy Joe Quandt in particular, whom defendant believes planted the evidence.

According to testimony presented at the hearing on July 31, 2017, defendant had hired an expert who rendered an opinion favorable to defendant's defense that the items seized by the government were not explosives but were fireworks. Defendant intended to proceed to trial, believing himself innocent of the explosives charge and confident he had a viable defense to that charge.

---

the hearing regarding defendant's request for new counsel post-dated defendant's guilty plea. Moreover, defendant was mistaken in his recollection of the hearing. I did not state that defendant should follow Mr. Willett's advice. (Doc. 103).

8

On May 30, 2017, the Court received and filed as correspondence a letter from Ms. Drake in which she indicated that defendant was not guilty of the ammunition charge. In that letter, Ms. Drake indicated that the box of ammunition photographed by the officers during the search was full of empty shell casings, which would have been apparent, had they only looked. At the July 31, 2017, hearing, however, testimony established that Ms. Drake confused the box of live Remington ammunition with another box of spent ammunition that defendant apparently possessed and later discarded at some point in the past.

Two days after Ms. Drake's correspondence was received by the Court, on June 1, 2017, defendant filed a Notice of No Objection to the Draft Presentence Investigation Report. (Doc. 83). Paragraph 15 of that draft presentence investigation report stated:

> On June 21, 2016, law enforcement executed a search warrant at the defendant's residence [in] Gladbrook, Iowa, and of the defendant's vehicle. During the search, law enforcement located, among other items, a Gamo .177 caliber air-soft rifle, ammunition consistent with the round of ammunition found at Doug Gethmann's residence, and at least two firearms – a rifle and a shotgun. The available information in the discovery file does not provide any other specifics regarding the rifle and shotgun. Law enforcement also located a box of Remington "Express Pistol and Revolver" centerfire ammunition with a brass cartridge, a small amount of marijuana, and some drug use paraphernalia. The ammunition was live and intact. The defendant had possessed this ammunition continuously at his home in Gladbrook since at least December 2015. Within his plea agreement, the defendant stipulated that he had smoked marijuana on multiple occasions from about December 2015 through at least January 2016 at his home in Gladbrook, Iowa.

(Doc. 79, ¶15). The draft presentence investigation report also discussed defendant's marijuana use, stating:

> Marijuana: The defendant first used marijuana at age 19 (1980) and his last use was in December 2015. The defendant advised that, from 1993 to 2008 he refrained from any marijuana use. After 2008, the defendant used

> marijuana a couple of times per year to "keep stress down." The defendant estimated that he used marijuana on three or four occasions between June 2015 and December 2015. It is noted that, during a substance abuse evaluation at Pathways Behavioral Services, the defendant indicated that he had last used marijuana in approximately June or July of 2016. The defendant's most significant marijuana use occurred during his twenties. The defendant did not provide any specifics regarding the amount or frequency of use, but stated that he used marijuana "more regularly".

(Doc. 79, ¶59). Defendant did not object to either of these paragraphs. The draft presentence investigation report indicated defendant's sentencing range is 24 to 30 months. (Doc. 79, ¶72).

On July 3, 2017, I held a status conference to determine whether defendant was continuing to proclaim his innocence of the ammunition charge and intended to move to withdraw his guilty plea. (Doc. 90). During that hearing, Mr. Eastman indicated that they had discussed these issues and apparently defendant had decided that he did want to move to withdraw his guilty plea. I then set a deadline for defendant to file the motion.

Regarding the factual background leading to the search of defendant's home, I adopt the Court's findings of facts made in relation to defendant's motion to suppress. (Doc. 51).

With regard to my credibility findings, I found the testimony of defendant and Mary Drake to lack credibility and I found the testimony of Al Willett and Dillon Besser to be credible. I base these credibility conclusions in part on my observation of the witnesses while testifying. I also base my conclusion on a number of other factors. For example, I find defendant's claims that he never saw the ammunition and marijuana found in his house and that officers planted the evidence, as totally incredible. Defendant has multiple firearms and, although he claims they did not function, his testimony is the only basis for that conclusion. The ammunition was found in a drawer with two handguns and the marijuana was found in a drawer with marijuana pipes that defendant admitted were

his. The idea that a deputy would plant those items and take photographs of them, but not seize them, is nonsensical. The sheriff's office never charged defendant with the illegal possession of ammunition. Moreover, were the officers intent on fabricating evidence against defendant, they could have planted far more clearly incriminating evidence than a box of ammunition.

I also find defendant's denial of smoking marijuana during the time period completely incredible. Both Mr. Willett and Mr. Besser testified that defendant was the person who came up with the date range when he smoke marijuana. Moreover, defendant's denial of marijuana use is inconsistent with his sworn testimony at the change of plea hearing before me, inconsistent with his admissions in the written plea agreement, inconsistent with his failure to object to the offense conduct portion of the draft presentence investigation report, and inconsistent with his statements to the probation officer about his use of marijuana as reflected in the draft presentence investigation report.

I also do not find credible defendant's testimony that he told Mr. Willett that he was innocent of the ammunition charge and that Mr. Willett coerced him into pleading guilty. That testimony was inconsistent with the testimony of Mr. Willett and Mr. Besser. Furthermore, it is, of course, inconsistent again with defendant's sworn testimony before me at the change of plea hearing when defendant twice stated that no one had forced or pressured him in any way to plead guilty. I also find it inconsistent with the fact that Mr. Willett was prepared to go to trial on the explosives charge because Mr. Willet believed defendant to be innocent of that charge. It is inconceivable to me why an experienced criminal defense attorney would coerce a defendant to plead guilty to an offense he knew the defendant did not commit when he is preparing to go to trial on another charge he believed defendant did not commit. Mr. Willett stood to gain nothing from coercing defendant into pleading guilty. Mr. Willett, in fact, stood to gain more from attorney's

fees if he were to go to trial than he stood to gain from defendant pleading guilty. Finally, the timing of defendant's protestation of innocence makes it suspect, to say the least. Defendant made no claim of innocence until after he was again detained for violating his conditions of release by using controlled substances and defendant faced the real possibility that he had blown his chance for the probationary sentence that Mr. Willett had negotiated on his behalf with the government.

### III. ANALYSIS

A Defendant has no absolute right to withdraw a guilty plea. *See United States v. Nichols*, 986 F.2d 1199, 1201 (8th Cir.1993). A district court may allow a defendant to withdraw his guilty plea if he shows a "fair and just reason," FED. R. CRIM. P. 11(d)(2)(B), but a guilty plea should not "be set aside lightly." *United States v. Prior*, 107 F.3d 654, 657 (8th Cir.1997). "'The defendant bears the burden of showing fair and just grounds for withdrawal.'" *United States v. Rollins*, 552 F.3d 739, 741 (8th Cir.2009) (quoting *United States v. Mugan*, 441 F.3d 622, 630–31 (8th Cir.2006)). "When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, 'the occasion for setting aside a guilty plea should seldom arise.'" *United States v. Morrison*, 967 F.2d 264, 268 (8th Cir.1992) (quoting *United States v. Rawlins*, 440 F.2d 1043, 1046 (8th Cir.1971)). "Even if such a fair and just reason exists, before granting the motion a court must consider 'whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion.'" *United States v. Ramirez-Hernandez*, 449 F.3d 824, 826 (8th Cir.2006) (quoting *United States v. Nichols*, 986 F.2d 1199, 1201 (8th Cir.1993)). "Where the court sees no fair and just reason to permit withdrawal, however, these additional matters need not be considered." *Id*.

I find defendant has not shown a fair and just reason to withdraw his guilty plea. Defendant argues that he was pressured and coerced into pleading guilty by his defense counsel and his fiancé. In order to be constitutionally valid, "a guilty plea must be knowing, voluntary, and intelligent." *United States v. Martinez-Cruz*, 186 F.3d 1102, 1104 (8th Cir.1999). Federal Rule of Criminal Procedure 11 requires a court when taking a guilty plea to conduct a colloquy with the defendant to ensure that the district court only accepts a knowing, voluntary, and intelligent guilty plea. FED. R. CRIM. P. 11(b)(1), (2), (3) (requiring the court to advise the defendant of the rights he is giving up by pleading guilty, question the defendant regarding the voluntariness of his decision to plead guilty, and determine that a factual basis exists for the plea). I have no doubt that both his attorney and his fiancé encouraged defendant to accept the very favorable plea offer. As I have noted in my factual findings, however, I find no credible evidence that defendant's attorneys pressured defendant into pleading guilty to a crime for which defense counsel believed defendant to be innocent. At the change of plea hearing, defendant twice told me under oath that no one had pressured or coerced him in any way into pleading guilty. *See*, *e.g.*, *United States v. Enriquez*, 205 F.3d 345, 348 (8th Cir.2000) (defendant was not entitled to withdraw plea based on contention that he was coerced into pleading because of threats of increased punishment against his wife, where, at plea proceeding, defendant denied being threatened in any way to induce his plea and denied that he had received any promise outside plea agreement as an inducement to his plea); *United States v. Abdullah*, 947 F.2d 306, 312 (8th Cir.1991) (finding that the defendant's failure to object at the plea change hearing refuted his claim that "his attorney pressured him into pleading guilty"). I also find defendant's claim that Mr. Willett pressured him into pleading guilty over defendant's protestations of innocence to be incredible, particularly in light of the contrary testimony by both Mr. Willett and Mr. Besser.

Nor am I persuaded that claimant's change of heart regarding his innocence provides a fair and just reason to allow him to withdraw his guilty plea. "An assertion of innocence-even a 'swift change of heart after the plea'-does not constitute a 'fair and just reason' to grant withdrawal." *United States v. Morrison*, 967 F.2d 264, 268 (8th Cir.1992) (quoting *United States v. Devins*, 646 F.2d 336, 337 (8th Cir.1981)). Here, defendant's change of heart was anything but swift; the first indication of defendant's claim of innocence was on May 9, 2017, almost two months after he entered his guilty plea and, significantly, only after he was again incarcerated for violating his conditions of release. Defendant did not file an actual motion to withdraw his guilty plea until July 12, 2017, almost four months after he entered his guilty plea. *See.*, *e.g.*, *United States v. Vallery*, 108 F.3d 155, 158 (8th Cir.1997) (holding the fact that over four months passed between the defendant's guilty plea and his motion to withdraw his guilty plea supported the district court's decision to deny the motion); *United States v. Boone*, 869 F.2d 1089 (8th Cir.1989) (denying defendant's motion to withdraw where defendant did not assert his legal innocence and he waited two months before filing his motion to withdraw his guilty plea).

Moreover, defendant's late protestations of innocence carry little weight when they directly contradict his admissions under oath at the change of plea hearing. *See United States v. Peebles*, 80 F.3d 278, 279 (8th Cir.1996) (per curiam) ("Furthermore, we agree with the District Court that Peebles's claims of innocence are unavailing, given his admissions to the contrary in the plea agreement and stipulation, and at the change-of-plea hearing."). Indeed, as I noted in my factual findings, defendant has not made a credible showing of actual innocence. A district court does not abuse its discretion where it does not allow a defendant to withdraw his plea based on inherently unreliable allegations unsupported by specific facts. *See United States v. Haubrich*, 744 F.3d 554, 557 n.2 (8th Cir. 2014). A "mere assertion of innocence, absent a substantial supporting

record, will not be sufficient to overturn a denial of a motion to withdraw." *United States v. Ludwig*, 972 F.2d 948, 951 (8th Cir.1992) (quotation, alteration, and citation omitted). Defendant's claim of innocence relies upon the illogical premise that a law enforcement officer planted evidence in his house, photographed that evidence, but did not seize it or charge defendant with the possession of the evidence. Moreover, as I noted, defendant's claim of innocence is also inconsistent with his failure to object to the offense conduct section of the draft presentence investigation report and the admissions he made to the probation officer about his use of marijuana.

Finally, I also find the government would be prejudiced were the Court to permit defendant to withdraw his guilty plea. Defendant entered his guilty plea just one week prior to the scheduled trial. "[A]llowing [a defendant] to withdraw his plea and forcing the government to prepare its case once again would prejudice the government." *United States v. Durham*, 178 F.3d 796, 798 (6th Cir. 1999). *See also United States v. Miell*, 711 F.Supp.2d 967, 991 (N.D. Iowa 2010) (finding prejudice where the government would be required to prepare for trial a second time, citing *Durham*).

## IV. CONCLUSION

For the reasons set forth above, I respectfully recommend the Court **deny** defendant's motion to withdraw his guilty plea. (Doc. 92).

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CRIM. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CRIM. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to

appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

      **IT IS SO ORDERED** this 4th day of August, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa